IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 5:12-cr-30 |
| v. ) | |
| ) | |
| JEAN PAUL ALVARADO, ) | By: Michael F. Urbanski |
| Defendant-Petitioner ) | Chief United States District Judge |

## MEMORANDUM OPINION

This matter comes before the court on Jean Paul Alvarado's pro se motion for compassionate release filed pursuant to 18 U.S.C. § 3582(c)(1)(A) to which the government responded. ECF Nos. 172, 178. After the government responded, the Federal Public Defender (FPD) supplemented Alvarado's motion, ECF No. 183. The government has not responded to the supplemental motion. Because Alvarado has not demonstrated extraordinary and compelling circumstances to justify his release, the court will **DENY** his motion.

I.

On July 19, 2012, a grand jury returned a one-count indictment charging Alvarado with distribution of heroin resulting in serious bodily injury and death. ECF No. 1. On May 16, 2013, a jury found Alvarado guilty of distributing heroin and further found that the distribution resulted in death. Jury Verdict, ECF No. 84. On April 25, 2014, Alvarado was sentenced to 240 months in prison to be followed by a 3-year term of supervised release. J., ECF No. 120. On April 28, 2014, Alvarado appealed the judgment to the United States Court of Appeals for the Fourth Circuit. ECF No. 123. On March 7, 2016, the Fourth Circuit affirmed the conviction and sentence. United States v. Alvarado, 816 F.3d 242 (4th Cir. 2016).

On May 12, 2017, Alvarado filed a motion to vacate pursuant to 28 U.S.C. § 2255, arguing ineffective assistance by both his trial and appellate counsel. Mot., ECF No. 146. On November 15, 2018, this court denied the motion. ECF Nos. 162, 163. On January 15, 2019, Alvarado appealed the denial to the Fourth Circuit which affirmed. United States v. Alvarado, 771 F. App'x 240 (4th Cir. June 4, 2019) (per curiam). Alvarado currently is housed at USP Yazoo City and has a projected release date of February 26, 2029.[1]

On May 14, 2021, Alvarado filed a pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that his asthma and obesity put him at heightened risk of death if he were to contract COVID-19 again after already having been infected once. ECF No. 172. On June 14, 2021, the government responded, arguing that Alvarado has not exhausted his administrative remedies, and also that he has been vaccinated from COVID-19, and thus does not present "extraordinary and compelling reasons" for compassionate release. ECF No. 178. Further, the government argues that even if Alvarado could present "extraordinary and compelling reasons," the § 3553(a) factors weigh against his release.

In his supplemental motion, filed with the benefit of counsel, Alvarado first argues that if the ruling in Burrage v. United States, 571 U.S. 204 (2014), had been decided before his trial, the jury instruction would have required but-for causation and Alvarado may have avoided conviction.[2] ECF No. 183 at 5-6. He posits that this is an "extraordinary and compelling reason" warranting compassionate release. Id. Second, Alvarado argues that the government's position on cases like his has shifted dramatically over the last ten years and that individuals with the same

---

[1] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visted June 22, 2021) (search "Jean Paul Alvarado").
[2] Burrage was decided on January 27, 2014. Alvarado was found guilty by the jury on May 16, 2013, and he was sentenced on April 25, 2014.

2

conduct are regularly allowed to plead to far less than time than the 17 years the government offered Alvarado in exchange for a guilty plea. See Suppl. Mot., ECF No. 183 at 10. Third, Alvarado argues that the § 3553(a) factors weigh in favor of reducing his sentence. See id at 17.

## II.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> 
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Alvarado's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.[3]

Regarding exhaustion of administrative remedies, the government argues that Alvarado has not exhausted his administrative remedies because the Bureau of Prisons (BOP) does not

---

[3] See United States v. Williams, No. 5:01-CR-00012-KDB, 2021 WL 966028, at *1-*2 (W.D.N.C. Mar. 15, 2021).

3

have a record of Alvarado's request for a reduction in his sentence. ECF No. 178 at 3-4. After the government filed its response, Alvarado represented to the court that he exhausted his administrative remedies because he made a written request for compassionate release to the warden at FCI Petersburg Low, where he was housed, and the request was denied on July 24, 2020. Suppl. Mot., ECF No. 183 at 3. In addition, on May 28, 2021, Alvarado's counsel made a new request for compassionate release on his behalf to the warden of USP Yazoo City and it has been more than thirty days since the request has been made. Suppl. Mot., ECF No. 183-1. Accordingly, the court finds that Alvarado has satisfied the exhaustion requirement.[4]

The court must next consider whether Alvarado has shown extraordinary and compelling reasons for a reduction in his term of imprisonment. The United States Sentencing Commission, Guidelines Manual ("USSG") § 1B1.13 application notes state that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the Bureau of Prisons ("BOP") for "other reasons" than, or in combination with, those described in Application Notes (A)-(C). Id. at cmt. n. 1(A)-(D).

---

[4] See United States v. Muhammad, 16 F.4th 126, 131 (4th Cir. 2021) (holding that the exhaustion requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court.)

**A. COVID-19**

Alvarado first argues that due to his severe asthma and obesity he is at heightened risk of death if he were to become reinfected with COVID-19. ECF No. 172. During the COVID-19 pandemic, this court has found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility. But the assessment of compassionate release claims based on COVID-19 has changed with the advent of vaccines against the disease. According to the Centers for Disease Control and Prevention, studies show that the "COVID-19 vaccines are effective at keeping you from getting COVID-19" and "will also help keep you from getting seriously ill even if you do get COVID-19."[5]

Alvarado has been vaccinated. See Medical R., ECF No. 178-1. He received the first dose of the Pfizer vaccine on April 15, 2021, and the second dose on May 6, 2021. Id. The court presumes that he has since been offered a third booster dose of the vaccine. Because he has been vaccinated, Alvarado no longer has a particularized susceptibility to severe illness from COVID-19. Alvarado also had a confirmed case of COVID-19 from which he recovered. In addition, according to the BOP, USP Yazoo City currently has two inmates and one staff person who have tested positive for COVID-19, indicating that steps taken at the unit to prevent transmission of the virus are effective.[6] Thus, the court finds that Alvarado no longer has a particularized risk for contracting COVID-19 and the court will **DENY** his motion for compassionate release based on COVID-19.

---

[5] Ctrs. for Disease Control and Prevention, Key Things to Know About COVID-19 Vaccines, (updated June 25, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html?s_cid=10490:covid%20vaccination:sem.ga:p:RG:GM:gen:PTN:FY21.
[6] https://www.bop.gov/coronavirus/ (last viewed June 23, 2022).

5

### B. Asthma and Obesity

Alvarado next argues that as a result of having had COVID-19, the asthma he has had for many years has become worse. He is having to use an inhaler almost three times as often as he did before he had COVID-19. Also, due to movement restrictions imposed by the prison in its efforts to combat COVID-19, Alvarado has gained weight, which in turn has exacerbated his asthma. He avers that he has experienced significant negative health impacts from his incarceration that may have long-term consequences on his health.

It is unfortunate that Alvarado's asthma symptoms have worsened and that he has gained weight, but he is not alone in having these conditions. Also, virtually all prisoners in the BOP have had their lives affected by movement restrictions. The court understands that the pandemic has presented particular difficulties to incarcerated people, but nevertheless finds that Alvarado has not shown "extraordinary and compelling reasons" for compassionate release based on his asthma and weight gain.

### C. Effect of Burrage

Alvarado next argues that if Burrage had been decided before his trial, the jury instruction would have required but-for causation and Alvarado may have avoided conviction. Suppl. Mot., ECF No. 183 at 5-6. In United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020), the Fourth Circuit held that district courts may consider "any extraordinary and compelling reason for [compassionate] release that a defendant might raise." Id. (citing United States v. Brooker, 976 F.3d 228, 239 (2d Cir. 2020)). In so holding, the court rejected the notion that district courts are constrained by the policy statement found in USSG § 1B1.13 and the application note that accompanies the policy statement. See discussion, McCoy, 981 F.3d at 280-84.

6

The McCoy court examined the changes to 18 U.S.C. § 924(c) brought about by the First Step Act.[7] Prior to the First Step Act, simultaneous convictions, and subsequently sentences, under § 924(c) were "stacked," meaning that "a conviction was treated as 'second or subsequent,' triggering the 25-year minimum sentence, even if the first § 924(c) conviction was obtained in the same case." McCoy, 981 F.3d at 275. The First Step Act changed the sentencing structure for multiple convictions under § 924(c)—the statute now requiring a new violation "that occurs after a prior conviction under [the] subsection has become final" to trigger the mandatory minimum sentence of 25 years. 18 U.S.C. § 924(c)(1)(C). "Under § 403 of the First Step Act, that is, the 25-year mandatory minimum is 'reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution.'" McCoy, 981 F.3d at 275 (quoting United States v. Jordan, 952 F.3d 160, 171 (4th Cir. 2020)). The practical result of the change is that where defendants once faced a mandatory minimum sentence of 25 or 30 years when convicted of two firearms offenses in a single prosecution, they now face a mandatory minimum sentence of 5 years on each offense, for a total of 10 years. United States v. Redd, 444 F. Supp. 3d 717, 720 (E.D. Va. Mar. 16, 2020). The McCoy court concluded that a "gross disparity" between a petitioner's sentence at the time of conviction and the sentence that would be imposed under current law, such as that brought about by the "unstacking" of the § 924(c) charges, can be considered an "extraordinary and compelling reason" for granting compassionate release.

Alvarado argues that Burrage changed the law in such a way that if he had been tried after Burrage was decided, he would not have received the 20-year sentence he was assessed in 2014

---

[7] Title 18 U.S.C. § 924 sets forth penalties for firearm offenses.

and that the court can reduce his sentence under McCoy. However, the court finds this argument unpersuasive.

In the Burrage case, Joshua Banka died after overdosing on drugs, including heroin he bought from defendant Burrage. The evidence showed that Banka started a drug binge by smoking marijuana and later in the day crushed, cooked, and injected oxycodone. That evening, he bought one gram of heroin from Burrage and immediately cooked and injected it. Later that evening he injected more heroin. The next morning, he was found dead in his home. A search of his house and car turned up syringes, 0.59 grams of heroin, alprazolam and clonazepam tablets, oxycodone pills, a bottle of hydrocodone, and other drugs. Burrage, 571 U.S. at 206.

Burrage pleaded not guilty to distributing heroin and to the charge that he had unlawfully distributed heroin and that "death . . . resulted from the use of th[at] substance," under § 841(b)(1)(C). At trial, a medical expert testified that multiple drugs were present in Banka's system at the time of his death, including heroin metabolites, codeine, alprazolam, clonazepam metabolites, and oxycodone. Id. at 207. Although morphine, a heroin metabolite, was the only drug present above the therapeutic range, the doctor could not say whether Banka would have lived had he not taken the heroin. He did conclude, however, that heroin was a contributing factor in Banka's death because it interacted with the other drugs to cause respiratory or central nervous system depression. Id. The state medical examiner reached a similar conclusion, describing the cause of death as "mixed drug intoxication" with heroin, oxycodone, alprazolam, and clonazepam all contributing to Banka's death. The medical examiner could not say whether Banka would have lived had he not taken the heroin but testified that his death would have been "very less likely." Id.

Burrage was convicted and the Eight Circuit Court of Appeals affirmed. The Supreme Court granted certiorari on two questions: whether a defendant may be convicted under the "death results" provision of § 841(b)(1)(C) when (1) the use of the substance is a "contributing cause" of the death and (2) without instructing the jury that it must decide whether the victim's death by overdose was a foreseeable result of the defendant's drug-trafficking offense. Id. at 208. The Court vacated the guilty verdict and remanded the case, holding that

> at least where the use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury.

Id. at 218-19.

The effect of Burrage on Alvarado's case has been addressed by this court and the Fourth Circuit Court of Appeals. This court first addressed the effect of Burrage on Alvarado's conviction when, after trial but before he was sentenced, Alvarado filed a motion for acquittal pursuant to Fed. R. Crim. P. Rule 29 and moved for a new trial pursuant to Fed. R. Crim. P. 33. See ECF Nos. 93, 95, 108, 113. Alvarado argued, among other things, that the evidence showed that the decedent, Eric Thomas, had been injecting a combination of heroin and Xanax (alprazolam). Autopsy results showed the presence of morphine (a heroin metabolite), Xanax, and Benadryl (diphenhydramine) in his his bodily fluids. Alvarado argued that the evidence did not show beyond a reasonable doubt that Thomas would have died had he only used the heroin.

In its memorandum opinion, the court cited Burrage and determined the jury had been properly instructed on the issue of causation. The court found that, unlike in Burrage, the state medical examiner in Alvarado's case testified that it was the heroin, and not the Xanax or Benadryl that Thomas had ingested, that killed him. Mem. Op., ECF No. 113 at 12-15. The court

9

denied the motions for acquittal and for new trial and sentenced Alvarado to 240 months on April 25, 2014. J., ECF No. 120.

Alvarado next filed a direct appeal with the Fourth Circuit. ECF No. 123. On March 7, 2016, the Fourth Circuit affirmed Alvarado's conviction and sentence in a published opinion, United States v. Alvarado, 816 F.3d 242 (4th Cir. 2016) (located herein at ECF Nos. 140, 141). The Fourth Circuit cited Burrage and found that "because there was no evidence in the record that Thomas could have died without the heroin, the jury's verdict was necessarily consistent with the Supreme Court's requirement of but-for causation." Id. at 244. The court further found that the jury instruction was proper. Id.

On May 12, 2017, Alvarado filed a motion to vacate pursuant to 28 U.S.C. § 2255. He argued (1) that his trial counsel was ineffective when she failed to object to the district court's decision to not clarify or supplement its instructions regarding the meaning of "death results from" in response to a question from the jury while it was deliberating, citing Burrage; (2) that he was legally, factually, and actually innocent of independently causing Thomas' death; and (3) that his appellate counsel was ineffective for failing to argue that because of his race, he was sentenced in a manner contradictory to Burrage. ECF No. 146.

On November 15, 2018, the court denied Alvarado's § 2255 motion to vacate, noting that Alvarado's habeas petition was founded on his view that the evidence presented at trial was insufficient to establish causation under Burrage and that the district court erred when it failed to provide additional instruction to the jury on the meaning of the statutory "results from" language. The court concluded:

> Each of these arguments was exhaustively considered by the district court in its memorandum opinion denying Alvarado's motion to reconsider his Rule 29

10

> motion in light of <u>Burrage</u>, ECF No. 113, and by the Fourth Circuit on direct appeal. Given the Fourth Circuit' [sic] ruling on direct appeal, Alvarado's repetitive habeas petition must be dismissed.

Mem. Op., ECF No. 162 at 8. Alvarado appealed the dismissal of the § 2255 petition and the Fourth Circuit affirmed the dismissal. <u>United States v. Alvarado</u>, 771 F. App'x 240 (4th Cir. June 4, 2019) (per curiam) (located herein at ECF Nos. 169, 170).

In the supplemental motion for compassionate release, Alvarado argues that <u>Burrage</u> changed the law such that it created a sentencing disparity that provides an extraordinary and compelling reason for compassionate release. However, had <u>Burrage</u> been decided prior to Alvarado's trial, it is unlikely that it would have changed the outcome of his case. As has been discussed at length by this court and the Fourth Circuit Court of Appeals, the evidence in the <u>Burrage</u> case differed from the evidence in Alvarado's case. In <u>Burrage</u>, a medical expert testified that heroin was a contributing factor in Banka's death and the state medical examiner described the death as "mixed drug intoxication" with all the drugs Banka had ingested contributing to his death. The medical examiner could not say whether Banka would have lived had he not taken the heroin but testified that his death would have been very less likely.

In Alvarado's case, the medical examiner who performed the autopsy on Thomas testified that the cause of death was heroin intoxication. Trial Tr., ECF No. 132 at 157. She reviewed the toxicology report, which showed that Thomas had a toxic level of morphine in his bodily fluids. <u>Id.</u> at 158, 160. The toxicology report also showed Xanax and Benadryl in his system, and both were within the therapeutic range, and "well below toxic range." <u>Id.</u> at 160-61, 176. The medical examiner testified that neither the Xanax nor the Benadryl contributed to Thomas' death and were it not for the heroin, he would not have died. <u>Id.</u> at 162, 176-77.

Had <u>Burrage</u> been decided before Alvarado was tried, nothing in the record indicates that the outcome would have been different. Given the testimony of the medical examiner, the evidence showed that the heroin Alvarado sold Thomas was the but-for cause of his death. Therefore, <u>Burrage</u> did not create a sentencing disparity in Alvarado's case and the court will **DENY** his motion for compassionate release based on <u>Burrage</u>.

Relatedly, Alvarado argues that more recent medical research indicates that there is a significantly higher risk of death when a person mixes benzodiazepines like Xanax with opiates like heroin. He argues that the medical evidence suggests that heroin could not be the but-for cause of Thomas' death. Suppl. Mot., ECF No. 183 at 6. However, Alvarado points to no authority to support his argument that new evidence is an "extraordinary and compelling reason" for granting compassionate release and the court is unaware of any such authority. In addition, evidence that taking heroin and Xanax together is dangerous would not undermine the opinion of the medical examiner that it was the heroin that killed Thomas. She testified specifically that neither the Xanax nor the Benadryl found in Thomas' bodily fluids contributed to his death. Trial Tr., ECF No. 132 at 176-77. The court finds that new medical evidence cited by Alvarado presents no ground for compassionate release.

### D. Lesser Plea Offers

The government offered Alvarado a binding plea of 17 years in exchange for a guilty plea. Had he accepted the offer, he would have pled guilty to a lesser included offense of distribution of heroin rather than to death or bodily injury resulting from the distribution. Suppl. Mot., ECF No. 183 at 10. Alvarado opted to go to trial where he would be subject to the 20-year statutory mandatory minimum sentence if found guilty. Alvarado argues that in other cases, the

12

government has dismissed counts of death or serious bodily injury in exchange for guilty pleas and has offered sentences shorter than the 17-year sentence it offered to Alvarado. Id. at 10-11. Alvarado claims that if his case were revisited today, the government likely would offer him a much shorter sentence as part of the plea agreement. He concedes that each case is different, but argues that it strains credulity to believe he, "an addict whose criminal history before this offense was only for simple possession of cocaine and who had never been incarcerated—would be forced to choose between a guaranteed 17 or guaranteed 20 years of incarceration today." Id. at 11.

Alvarado's argument amounts to nothing more than a speculative conclusion bolstered by wishful thinking, and is unsupported by the record in his case. The court is not involved in charging decisions made by the United States nor in the negotiation of plea agreements. And, as Alvarado concedes, each case is different. The government assesses the evidence that supports or undermines a finding of guilt and weighs other factors such as assistance offered by a defendant in the prosecution of other defendants or cases. While it is true that the government has offered shorter sentences as part of plea negotiations in cases where defendants have been charged with distribution resulting in death or serious bodily injury, that fact does not lead to the conclusion that there is a disparity between the sentence Alvarado received in 2014 and the sentence he would received today.

The court acknowledges that Alvarado was a drug addict who sold heroin to support his habit and further acknowledges that Alvarado's institutional record is very good. The court is impressed by the strides Alvarado has made to better himself and the relationships he has maintained with family members while incarcerated. It is hoped that the positive steps he has

taken indicate that he will lead a productive life once he is released from incarceration. Nevertheless, the fact remains that Alvarado was found guilty by a jury of committing an offense with a 20-year statutory mandatory minimum sentence and was sentenced accordingly. Nothing in the compassionate release statute offers Alvarado relief from his sentence and the court must **DENY** his motion.[8]

## III.

For the reasons stated herein, the court **DENIES** Alvarado's motions for compassionate release, ECF Nos. 172, 183. The clerk is directed to send a copy of this order to the petitioner, his counsel of record, and the United States.

An appropriate order will be entered.

It is so **ORDERED.**

Entered: July 5, 2022

Michael F. Urbanski
Chief United States District Judge

---

[8] Because Alvarado has not demonstrated any "extraordinary and compelling reasons" for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), the court will not address the § 3553(a) factors.

14